IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

UNITED STATES OF AMERICA

v.

GERRETT CONOVER

Mag. No. 12-2080(JS)

**OPINION**

Defendant is charged in a criminal complaint with the receipt and distribution of child pornography. This matter is before the Court on defendant's request for bail pursuant to 18 U.S.C. § 3142(f). For the reasons to be discussed, defendant's request is DENIED and he is ORDERED detained. This Opinion will set forth the Court's written findings of fact and a written statement of the reasons for the detention as required by 18 U.S.C. § 3142(i).

Background

In April 2012, during the course of a child exploitation investigation initiated by the Department of Homeland Security in Boston, law enforcement officers discovered numerous Yahoo messenger chats from one of the laptops used by the main target ("RD") of the investigation. See Complaint ¶2. To date the investigation has resulted in at least 45 arrests and the identification of approximately 151 children who were victimized by the various individuals involved. Id. ¶4. RD's computer chat logs revealed communications with an individual using the name

"petersneaks."  Id. ¶2.  RD and "petersneaks" discussed their "mutual sexual attraction to children, their desire to perform oral sex on children and comments of a sexual nature pertaining to files that they had been sharing." Id. ¶2.  When RD was interviewed in May, 2012, he indicated that he traded child pornography with "petersneaks" for a period of two to three years.  Id. ¶5.  The Boston agents identified defendant as "petersneaks" and "entered a lookout" into a Homeland Security Investigations database.  Id. ¶11.  The investigation was then transferred to local law enforcement personnel.  Id. ¶8.

On September 16, 2012, defendant was arrested at the Ogdensburg, New York port of entry, coming into the United States from Canada.  Defendant's laptop was searched and it revealed the presence of child pornography.  Id. ¶12.  Defendant admitted the laptop belonged to him and that he knew about the video found on his computer.  Id. ¶13.  Defendant was charged in the Northern District of New York with Importation or Transportation of Obscene Matters, in violation of Title 18 U.S.C. § 1462, and possession of child pornography, in violation of Title 18 U.S.C. § 2252A(a)(5)(B).  Defendant was released on bail in New York on September 18, 2012.

On September 17, 2012, New Jersey search warrants were executed on defendant's home in Woolwich Township, New Jersey.  A substantial amount of evidence was seized during the search,

2

including computers, hard drives, cell phones, slides, DVD's, cameras, and VHS and 8mm tapes.  Agents also seized boy scout paraphernalia, such as a uniform, photographs, badges and t-shirts.

On September 20, 2012, this Court signed a criminal complaint charging defendant with receipt and distribution of child pornography pursuant to 18 U.S.C. § 2252(a)(2)(A) and 2.  As of that date the investigators only reviewed a disk containing 19 images and one video identified in the chat between RD and "petersneaks" from files retrieved from RD's laptop.  Id. ¶9.  The video was sent by defendant to RD, was dated November 6, 2010, and depicts child pornography involving a pre-pubescent boy approximately 10 years old.  Id. ¶9.  As will be discussed in more detail, defendant's chat logs contain explicit references to his sexual contact with and prurient interest in young boys.

Defendant appeared for his initial appearance on September 21, 2012.  At the request of defense counsel, a detention hearing was scheduled on September 27, 2012.  In the meantime, an Order of Temporary Detention was entered.  Defendant's detention hearing was held on September 27, 2012.  At the hearing the Court issued its Oral Opinion denying defendant's request for bail.  The Court ruled that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community.

Although the government did not have much time to review

3

defendant's seized belongings before his bail hearing, its search was revealing.  The search uncovered thousands of photographs of child pornography.  The images are graphic, and show, inter alia, digital penetration of pre-pubescent boys.  The government also retrieved some of defendant's chat logs from 2010 and 2012.  In the chats defendant professes his interest in young boys and describes his sexual encounters.  Defendant described a "close relationship" he had with a Boy Scout when the boy was 10 to 17 years of age.  The logs indicate that defendant left the Boy Scouts about eight years ago because he realized he loved the boy and other boys did not mean anything to him.  Defendant's chat stated that he last saw the boy about a year ago.  Id. ¶17.  When asked in the chat if he had any other boys, defendant replied "[a] few ... but just as fun times."  As noted, amongst the items seized from defendant's home was evidence indicating that he participated as a leader in the Boy Scouts from approximately 1990 though 2000.  Id. ¶18.

   Defendant is single, 47 years old, lives alone, and has no children.  Defendant has no criminal record.  Defendant is a United States Citizen with a valid passport.  Defendant has extensive international travel experience, traveling to the Netherlands, Germany, Russia, Italy, Costa Rica, Belgium, Venezuela, Spain and Canada.  Defendant has been employed by Radiosystems, a company that manufactures audio equipment for radio broadcasting companies, for the past 25 years.  Defendant's current title is Vice-

4

President, General Manager.  Defendant earns an annual income of approximately $110,000 and has substantial assets.  Defendant's responsibilities include overseeing the Information Technology Department within his company.  Defendant has extensive knowledge regarding the operation of computers and networks and has been described as invaluable to the operation of Radiosystems.

Defendant's boss and owner of Radiosystems, Daniel Braverman, testified at the detention hearing.  Braverman has known defendant for 25-30 years and never suspected he had a sexual interest in children or that he collected or viewed child pornography.  He described defendant as essential to his eighteen (18) employee company.   He acknowledges defendant's computer expertise and believes it would be very difficult for the company to conduct business if defendant is detained.  If he is released, Braverman will allow defendant to keep his job, but Radiosystems will take all reasonable precautions to assure that defendant does not access illegal sites on the internet.

Defendant proposes that he be released on bail into the custody of his elderly father, who has agreed to relocate from Florida to New Jersey.  Defendant proposes that he be permitted to work at Radiosystems with electronic monitoring.  Radiosystems agrees to permit Pretrial Services to monitor defendant's work computer.

Discussion

The applicable law regarding defendant's bail decision is not in dispute. A defendant must be released on bail on the least restrictive condition or combination of conditions that will reasonably assure his/her appearance and the safety of the community. See 18 U.S.C. § 3142(c)(1)(B). However, defendant must be detained if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and community." 18 U.S.C. § 3142(e)(1). If the government moves for detention on the basis of danger to the community, it must prove this by clear and convincing evidence. If the government or court believes detention is appropriate because there is a risk of flight, this must be proven by a preponderance of the evidence. See generally United States v. Abdullahu, 488 F. Supp. 2d 433, 437-38 (D.N.J. 2007), recon. denied, 2007 WL 1816010 (D.N.J. June 21, 2007).

If probable cause exists to believe that defendant committed an offense listed under 18 U.S.C. § 2252(a)(1), which the Court so finds, then a rebuttable presumption exists that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Once the rebuttable presumption is established, the burden is placed on defendant to produce countervailing evidence

6

that forms a basis for his contention that he will appear and does not pose a threat to the community.  United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986).  If defendant meets this burden of production, the burden shifts back to the government to prove a risk of flight by a preponderance of the evidence, or dangerousness by clear and convincing evidence.  United States v. Perry, 788 F.2d 100, 114-15 (3d Cir. 1986).  The burden of persuasion always rests with the government.  Id.  Defendant does not dispute that this is a "rebuttable presumption" case.

For the reasons discussed in the Court's oral ruling at defendant's detention hearing, and confirmed in this Opinion, the Court finds that defendant has not rebutted the presumption of detention.  In the alternative, even if defendant rebutted the presumption, the government has proven by a preponderance of the evidence that no condition or combination of conditions exist that will reasonably assure defendant's appearance at trial.  The Court also finds the government has proven by clear and convincing evidence that no condition or combination of conditions exist that will reasonably assure the safety of the community if defendant is released.

The factors a court must consider in determining whether bail or detention is appropriate are set forth in 18 U.S.C. § 3142(g).  They include the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a

minor victim, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community that would be posed if the defendant is released.  18 U.S.C. § 3142(g).  A danger to the community does not only include physical harm or violent behavior.  United States v. Schenberger, 498 F. Supp. 2d 738, 742 (D.N.J. 2007).  The concept of "safety" may include non-physical harm.  Id.; United States v. Giampa, 904 F.Supp. 235, 358 (D.N.J. 1995); United States v. Provenzano, 605 F.2d 85, 95 (3d Cir. 1979) (holding that "[a] defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute sufficient risk of danger to come within contemplation of [the Bail Reform Act]").  In assessing a defendant's danger to the community courts look at the nature and circumstances of the crime, the pre-sentence report, the defendant's prior criminal record, pending charges and any other factors indicative of the defendant's propensity to commit crime generally, or otherwise to endanger the community.  Id. at 96. Factors courts look at to assess a defendant's risk of flight include the nature and circumstances of the offense, defendant's family ties, employment status and financial resources, defendant's character and mental condition, the length of defendant's residence in the community, any prior criminal record and any flight or failures to appear in court proceedings.  United States v. Bissell,

8

954 F.Supp. 903, 907 (D.N.J. 1997); Giampa, 904 F.Supp. at 358. Pursuant to 18 U.S.C. § 3142(g), the Court will undertake to examine the statutory factors to determine if bail or detention is appropriate.

(1) <u>Nature and Circumstances of the Offense Charged</u>

The first factor the Court must examine to determine if bail should be granted is the "nature and circumstances" of the offense charged. This factor weighs in favor of detention.

Defendant is charged with the receipt and distribution of child pornography. In and of itself this is an insidious offense. <u>United States v. MacEwan</u>, 445 F.3d 237, 249-50 (3d Cir. 2006). The Third Circuit has acknowledged the dangers of child pornography and quoted congressional findings under 18 U.S.C. § 2251 which "repeatedly stress that child pornography 'is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved.'" <u>Id.</u> at 249 (quoting Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, §121, 110 Stat. 3009, 3009-26 (1996)(codified as amended at 18 U.S.C. § 2251)).[1] Further, the Circuit quoted the same findings which indicate that "where children are used in its production, child pornography

---

[1] Although this case involves a prosecution pursuant to § 2252, and not § 2251, the Third Circuit notes that the congressional findings underlying the Child Pornography Prevention Act of 1996 are relevant to closely related statutes designed to prosecute child pornography offenses successfully. <u>MacEwan</u>, 445 F.3d at 250 n. 12.

9

permanently records the victim's abuse and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Id. at 250. "The mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children'." Id. Furthermore, child pornography "inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as the result of the existence and use of these materials." Id.

Significantly, the Court's analysis is not limited to only examining the "offense" charged. Congress intended for courts to examine defendant's actions in the context of all relevant background evidence. Abdullahu, 488 F. Supp. 2d at 439. This is especially important here because defendant's charge does not tell the whole story. Defendant's chat logs discuss his longstanding sexual interest in, and intimate contact with, young boys. The logs also discuss, inter alia, defendant's unusual fetishes, his interest in autoerotic asphyxiation and getting "mummified and bagged", his current communications with a minor in Canada[2], and

---

[2] The defendant's logs indicate he has been chatting with an 11 year old in Canada for two years and "[they've] done stuff on cam together." Defendant wrote he is considering going to meet the boy.

10

his interest in wrapping boys in Saran Wrap. In addition, the logs discuss defendant's actual or fantasized "spying" on boys in public places such as the beach and mall.

Defendant points out that he is not charged with illicit physical contact with a minor, nor is he charged with soliciting a minor. However, this is not a bar to detention. The Court does not have to wait for direct proof that defendant molested a minor before it finds defendant is a danger to the community. Schenberger, 498 F.2d at 744; United States v. Nicholson, CR-06-750-PHX-DGC, 2006 U.S. Dist. LEXIS 67387, at *7 (D. Ariz. Sept. 19, 2006) ("There can be no doubt that those who consume and distribute this material [child pornography] encourage its production, as there can be no doubt that the production of such materials involves the abuse of children."). See also United States v. Reiner, 468 F. Supp. 2d. 393 (E.D.N.Y 2006); United States v. Havens, 487 F. Supp. 2d 335 (W.D.N.Y. 2007); United States v. Falcon, Crim. No. 06-60080-01, 2007 U.S. Dist. LEXIS 44358 (W.D. La. June 18, 2007); United States v. Stram, Crim. No. 07-cr-050-01 PB, 2007 WL 529668 (D.N.H. Feb. 12, 2007). As will be discussed in more detail, the Court steadfastly rejects defendant's argument or intimation that bail is appropriate because there is no direct evidence that he had physical contact with a minor.

(2) Weight of the Evidence

The second factor the Court must examine in its detention

analysis is the "weight of the evidence." This factor weighs in favor of detention. Even though the government has not completed its investigation, it has already confirmed defendant's receipt and possession of "thousands" of images of child pornography. Included in the collection is a folder of a boy, approximately 2-3 years old, being digitally penetrated and sodomized by what appears to be an adult male penis. Further, defendant has not denied he is "petersneaks" and that he authored the chats which discuss his lust for boys. Although defense counsel attributes defendant's chat logs to puffing, the Court is skeptical. To date, much of what defendant stated in his chats has been corroborated by other evidence.[3]

(3)   History and Characteristics of the Defendant

The third factor the Court must examine in its detention analysis is the history and characteristics of the defendant. Defendant argues this factor weighs in favor of release because he has no criminal history and (by outward appearances) he is a law abiding citizen. Nonetheless, what has recently been learned strongly weighs in favor of detention. The fact that defendant has been able to avoid detection for so long evidences his intelligence and cunning. Further, his specialized computer expertise is

---

[3]This includes the fact that defendant was a boy scout leader, he bought diapers and plastic pants on line, he was close to a boy named "T", and he owned a large collection of children's sneakers.

troubling. In United States v. Davin, No. 12-10141-EFM, 2012 WL 2359419, at *3 (D. Kan. June 20, 2012), the Court denied bail for Davin on child pornography charges and stated, "most troubling is Davin's knowledge of and familiarity with computers. Coupled with his ability to hide his behavior from family members in the past, the Court believes Davin's technological prowess poses a significant risk that he will engage in further illegal behavior if released from custody." See also United States v. Crisman, No. CR 11-2281 JB, 2011 WL 5822731, at *18 (D.N.M. Nov. 15, 2011)(quoting United States v. Tierney, No. 09-68-VBF-13, 2010 WL 1929828, at *1 (C.D. Cal. May 10, 2010) ("His messages posted on Lost Boy, indicate a deep familiarity with child pornography and make his sexual interest in young boys explicitly clear . . . . This shows that the Defendant is a danger to the community, particularly to children."). The same situation exists for defendant. Further, defendant lives in a residential community or development where he is bound to come into contact with minors. Indeed, one of defendant's chats referred to a disturbing incident involving a neighbor who was only 14 years old.[4]

(4) <u>Nature and Seriousness of the Danger to Any Person or the Community</u>

The last factor the Court must examine in its detention analysis is the nature and seriousness of the danger to any person

---

[4] No physical contact was involved. It is also not clear if the incident occurred or if it was a fantasy.

13

or the community if the defendant is released. This factor overwhelmingly favors detention. No direct evidence has been presented that defendant molested or physically abused a child. Nevertheless, the evidence available to date is probative that this likely occurred. At a minimum, there is no question defendant has a strong lust for such contact. The risk to the community from someone who appears to be as unstable as defendant is enormous. Further, as to the instant charge, the Court has already discussed the fact that child pornography is an insidious offense that is dangerous to the entire community, not just minors. The Court has also cited case law and congressional reports discussing that the receipt and exchange of child pornography in and of itself is dangerous.

Although there are instances when bail is appropriate for a defendant charged with receiving and distributing child pornography[5], and who is not charged with molesting a minor, this is not such an instance. The evidence is compelling that defendant presents a substantial danger to the community if he is released, no matter what conditions are imposed.

The Court's ruling is supported by substantial case law, including its opinion in Schenberger, supra. In Schenberger, the defendant was employed as a policeman with a local police

---

[5] See, e.g., United States v. Carney, No. CRIM. 06-350, 2006 WL 3231950 (W.D. Pa. Nov. 7, 2006); United States v. Thomas, No. CRIM. CCB-03-0150, 2006 WL 140558 (D. Md. Jan. 13, 2006).

department and was charged with receipt and distribution of child pornography. Like this case, the defendant had strong community ties and no criminal record. There also was no evidence the defendant ever physically accosted a child. However, the defendant was arrested moments before he thought he was going to watch, via a webcam, a five-year old get molested by an adult in Tennessee. Despite the lack of evidence that the defendant ever abused a minor himself, he was detained. The Court reasoned, inter alia, that the fact that the defendant was going to permit an abuse to take place was a "window into his character." Schenberger, 498 F. Supp. 2d at 745. The Court also found that if the defendant viewed and exchanged child pornography in a police station, "it is difficult to conceive of a situation that would deter him from his illegal conduct." Id. Defendant's chats also provide a window into his character and are conservatively described as disturbing. If what defendant wrote is true, which appears to be the case based on presently available evidence, it demonstrates that defendant is troubled and is not likely to comply with court imposed restrictions on release. If defendant was willing to risk getting arrested, and the public embarrassment and humiliation of being observed in the situations described in his logs, it is not likely bail conditions will deter his illegal conduct.

Another instructive case is United States v. Allen, No. 6:12-cr-00002-8, 2012 WL 1833889 (W.D. Va. May 18, 2012). In that case

15

the defendant was charged with trading a large amount of child pornography depicting the serial abuse of infants and toddlers. The defendant was 65 years old, lived in the same house since the 1950s, and was a practicing accountant for thirty years with no criminal history.  At defendant's bail hearing he presented the expert report of a nationally-recognized expert on the relationship between child pornography and "hands-on" sexual offenses.  The expert opined the defendant was unlikely to pose a significant danger to the community. Nevertheless, the Court denied bail.  The Court reasoned that defendant's interest in the sexual abuse of children created a risk that he could re-offend.  Id. at *5.  The Court also emphasized that defendant referred to the possible abuse of a child in one of his chats.  This created an "inference" that the "Defendant may have been contemplating the commission of a hands-on offense (or at the very least, fantasizing about doing so)."  Id.  The Court concluded "[i]n the end, the potential danger Defendant poses, especially to children, counsels against setting conditions for his potential release."  Id.  This case law supports the Court's ruling that a defendant charged with the receipt and distribution of child pornography may be detained without direct evidence that he assaulted anyone.

   Even if defendant was not telling the truth about his alleged conduct, he has not adequately explained his language.  Further, "the chat logs demonstrate, at a minimum, that [defendant] has a

16

strong desire to have sexual relations with minors." United States v. Bivins, Cr. A. No. 7:11-cr-19(HL), 2011 WL 2182239, at *3 (M.D. Ga. June 3, 2011). Like this case, the defendant in Bivins was detained in the absence of direct evidence that he molested anyone. However, like Bivins, "[t]he Court is hesitant to release back into the community a defendant who has shown a persistent determination to access child pornography and interest in having sexual relations with minors." Id. See also Tierney, 2010 WL 1929828, at *1 ("His messages posted on Lost Boy indicate a deep familiarity with child pornography and make his sexual interest in young boys explicitly clear . . . . This shows that the Defendant is a danger to the community, particularly to children."); Crisman, 2011 WL 5822731, at *21 ("While the Court is cautious about detaining 'lookers' and people who merely fantasize, the Court is also not obligated to close its eyes and to not detain someone until it has evidence that the defendant has touched someone.").

Although defendant will agree not to use or access a computer, this condition of release is difficult to enforce. Schenberger, 498 F. Supp. 2d at 744-45. This is especially true given defendant's computer expertise. Moreover, "[t]he ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion"; United States v. Voelker, 489 F.3d 139, 145 (3d Cir. 2007). See also Reiner, 468 F.Supp. 2d at 398-99

17

(electronic monitoring does not adequately address the ability to access phones or computers in the home which could be used for illicit activities, even if steps were taken to prevent the items from being present in the home). Access to the internet is possible through desktop and laptop computers, phones, game consoles, WIFI, hot spots, etc. Given defendant's computer expertise, and his background and character, the Court is not persuaded that meaningful assurances can be given that his prohibited conduct can be stopped. Even if defendant could somehow be prohibited from viewing or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that he would not communicate with others and encourage the distribution of child pornography and related illicit activities. As noted in Falcon:

> It is not possible to formulate conditions of release which would completely deprive . . . a defendant of the ability to possess or attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography, or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

2007 U.S. Dist. LEXIS 44358, at *15-16 (internal citations omitted). See also Reiner, 468 F. Supp. 2d at 399. Underlying defendant's argument is the current that he is not charged with molesting a minor, and no direct evidence of molestation has been presented. Nevertheless, the Court cannot emphasize enough that

18

this is not a prerequisite to detention.

Thus far the Court has focused on defendant's danger to the community if released.  However, defendant is also detained because he is a flight risk.  Defendant has a significant incentive to flee if he is released.  The fact of the matter is that in the past month defendant's life has "crashed."  It is also probable that more of his "secrets" will be revealed as the government's computer investigation continues.  This will likely lead to a significant prison sentence and the wrath of the local community.  Defendant may also be cut off from his family because of an ongoing investigation into his potential illicit contact with a young nephew.  Under these circumstances defendant has a great incentive to flee.  Given defendant's international travel experience, his access to liquid assets, and his computer expertise, the risk of flight is enormous.  The proposed electronic monitoring is inadequate because it impedes, but does not prevent, defendant from fleeing.  Abdullahu, 488 F. Supp. 2d at 444.  Defendant argues that since he returned to New Jersey after his arrest in New York he is not a flight risk.  However, defendant is now in a drastically different situation than he was after he was arrested in New York.  Rather than just facing a charge involving a child pornography video on his computer, defendant's world has come crashing down.  The evidence already discussed speaks for itself.

Conclusion

    For the foregoing reasons, the Court finds that detention is appropriate and has entered an Order of Detention Pending Trial.

                                       s/Joel Schneider
                                       JOEL SCHNEIDER
                                       United States Magistrate Judge

Dated: October 10, 2012