No. 1:13-CR-00516-NLH

*In the*

# United States District Court

*for the*

# District of New Jersey

United States of America,

*Plaintiff,*

v.

Gerrett Conover,

*Defendant,*

Andy, Child Pornography Victim,

*Crime Victim.*

**CRIME VICTIM ANDY'S MOTION ASKING THE COURT TO INFORM THE DEFENDANT OF THE PLEA AGREEMENT'S RESTITUTION CONSEQUENCES, TO INFORM THE DEFENDANT THAT HE SHOULD NOT REDUCE OR DISSIPATE ASSETS, TO PROCEED BY PSEUDONYM, AND TO RECEIVE CM/ECF NOTICES**

Alexander T. Linzer
MARSH LAW FIRM PLLC
PO Box 4668 #65135
New York, New York 10163-4668
Phone: (212) 980-4050
Email: alexlinzer@marshlaw.us
*Andy's 18 U.S.C. § 3771 Representative*

James R. Marsh
MARSH LAW FIRM PLLC
PO Box 4668 #65135
New York, New York 10163-4668
Phone: (212) 372-3030
Email: jamesmarsh@marshlaw.us
*Andy's 18 U.S.C. § 3771 Representative*

## INTRODUCTION

The defendant in this case, Gerrett Conover, was charged in a thirteen-count indictment with a variety of federal child pornography crimes including possession of child pornography in violation of 18 USC §§ 2252A(a)(5)(B) and 2252A(b)(2). One of the children whose child sex abuse images Conover criminally possessed is "Andy."

Andy was recently informed by the Government pursuant to the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, that he is a "victim" in this case. He was also informed that Conover is preparing to enter a guilty plea that will require him to make restitution to all his identified victims including Andy. Andy is preparing to file a request for restitution which will ask Conover to pay the "full amount" of his losses as required by the Mandatory Restitution for Sexual Exploitation of Children Act of 1994, 18 U.S.C. § 2259.

Andy is filing this motion to notify the parties of his intention to seek significant restitution. He respectfully requests that the Court inform Conover during the colloquy, about his restitution obligations under the plea agreement so there is no later claim of surprise. Andy further asks the Court to inform the defendant that he should not attempt to move, transfer, conceal, dissipate or

otherwise reduce his assets in an effort to avoid restitution. Andy also seeks leave to proceed by way of pseudonym and for CM/ECF notices in this case.

## BACKGROUND

On August 7, 2013, the United States filed a thirteen-count indictment against Conover charging him with various child pornography crimes. Counts 1 and 2 charged sexual exploitation of children in violation of 18 U.S.C. § 2251(a). The victims of these two counts were identified as "Minor Boy 1" and "Minor Boy 2." Counts 3 through 12 charged receipt and distribution of child pornography in violation of Sections 2252A(a)(2) and 2252A(b)(1). These counts alleged illegal distribution of child sex abuse images. Count 13 charged possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). Specifically, the indictment alleged that Conover "did knowingly possess computers and hard drives which contained three or more images of child pornography...."

According to the Government, law enforcement agents "to date, . . . have found thousands of images of child pornography on Conover's computers and hard drives, and volumes of additional inculpatory evidence." Criminal Docket, Doc. 33 at 12.

"Child pornography[1] is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from [criminal] sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement." *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010)

Child pornography is a photographic record of a child's sexual abuse. Offenders use these images for sexual arousal. *See* Cooper, *Aspects of Child Sexual Exploitation*. Offenders often create collections of child pornography that they exchange with one another, not only for their own personal gratification but also to "normalize" and gain support for their illicit behavior. *Id.* at 267. Offenders often show child pornography images to children in an effort to lower a child's inhibitions

---

[1] "In the context of children...there can be no question of consent, and use of the word pornography may effectively allow us to distance ourselves from the material's true nature. A preferred term is abuse images and this term is increasingly gaining acceptance among professionals working in this area. Using the term abuse images accurately describes the process and product of taking indecent and sexualized pictures of children, and its use is, on the whole, to be supported." Sharon W. Cooper, et. al., *Medical, Legal, & Social Science Aspects of Child Sexual Exploitation* p. 258 (2005).

so they will participate in sexual acts and to "educate" them about how to perform sexual acts. *Id.* at 266.

One of the children whose child sex abuse images Conover possessed is a young man known by the pseudonym "Andy." As a child sex crime victim, Andy hereby requests permission to proceed by way of pseudonym in accordance with 18 U.S.C. § 3509(d) to protect his privacy.

When he was a child, Andy was sexually abused by a man who produced child pornography which was distributed via the Internet. Andy's images and videos now constitute a widely-disseminated child pornography series. Andy is currently receiving several dozen notices each month that he was identified as a victim in various federal child pornography prosecutions across the country. Andy has received psychological counseling concerning his abuse and exploitation and it is expected that such counseling will be necessary throughout his life.

Scientific research and established legal precedence support the necessity of long-term mental health treatment for victims like Andy. Dr. Mimi Halper Silbert discovered that the long-term effects on child pornography victims of being photographed were more debilitating than any short-term or medium-term effects and that these effects are compounded when children are involved in more than one form of sexual exploitation. These ill-effects may be exacerbated by the knowledge

that others may see or distribute the images. Dolf Zillmann & Jennings Bryant, *Pornography: Research Advances and Policy Considerations* p. 215 (1989).

Studies have documented the harm caused to a victim by the possession and distribution of these images. These studies have demonstrated that victims experience intense feelings of powerlessness from knowing that there is nothing they can do to prevent others viewing their pornographic images. *See* National Society for the Prevention of Cruelty to Children, *Images of abuse: a review of the evidence on child pornography* (2006). Victims are also concerned that images of their abuse may be used to entice or manipulate other children into sexually abusive acts. *Id.* at 4-5. The continuous distribution and possession of a victim's child sex abuse images imposes a permanent and recurring reminder of their sexual abuse and this knowledge further exacerbates the psychological harm caused by the actual act of abuse. *Id.*

Studies on victims of child pornography also indicate that the child's original psychological harm continues into adulthood and impacts their ability to form healthy relationships with others. John E.B. Myers, et al., *The APSAC Handbook on Child Maltreatment* (2d ed. 2002). The symptoms of distress exhibited by child victims of sexual abuse continue after the actual sexual exploitation to the time of disclosure and into the post-traumatic phase as well. *Id.* at 59-62. In cases of online

child pornography, where the crime is perpetuated by the continual circulation of the child's images, these symptoms of distress are likely to continue with each new distribution and possession.

Child victims experience depression, withdrawal, anger, and other psychological disorders that can continue well into adulthood. *Id.* at 64. Child victims also frequently experience feelings of guilt and responsibility for the abuse as well as feelings of betrayal, a sense of powerlessness, worthlessness, and low self-esteem. *Id.* at 59. Younger children tend to externalize stress by re-enacting sexual activities through play, while adolescents may experience negative effects on their developing sexuality. *Id.* at 52.

Studies also suggest that a significant part of the healing process for children traumatized by sexual abuse is the ability to control the disclosure of the abuse. Victims who felt powerless when the abuse occurred may feel empowered by choosing when, how, and to whom to disclose their abusive experiences. Ethel Quayle, et al., *Child Pornography and Sexual Exploitation of Children Online* (2008). Children victimized through the online distribution and possession of child sex abuse images are stripped of the ability to control the disclosure of their abuse. *Id.* at 59. Instead, their abuse is perpetrated by the uncontrollable distribution of their images across the Internet at any time and to any number of recipients. *Id.* at 59-60.

The repeated distribution and possession of child pornography images in an uncontrolled setting re-victimizes children and exposes them to further shame and humiliation and the attendant physical and mental results of this abuse. *Id.* at 59.

In the landmark case of *New York v. Ferber*, 458 U.S. 747 (1982), the Supreme Court found that:

> [t]he use of children as subjects of pornographic materials is very harmful to both the children and the society as a whole. It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults...
>
> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography...It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.

*Id.* at pp. 758-760 nn. 9, 10.

In *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002), the Supreme Court noted that "as a permanent record of a child's abuse, the continued circulation [of child pornography] itself would harm the child who had participated. **Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being.**" (emphasis

added) This rationale—that the very existence of child pornography continuously harms a victim—supports the conclusion that the consumer of his child sex abuse images harms Andy, even if the "mere possessor" did not commit the physical act depicted in the images.

The National Center for Missing and Exploited Children has also described the effects of child pornography on its victims:

> Because children are sexually abused in the creation of the pornographic images, they can incur physical injuries such as genital bruising, cuts, lacerations and sexually transmitted diseases. The children may suffer psychological injuries including depression, anger, withdrawal, low self-esteem and feelings of worthlessness. These feelings may be expressed in flashbacks, nightmares and other indicia of post-traumatic stress syndrome.
>
> They often engage in self-destructive behavior including substance abuse, prostitution, depression and suicide. When the pornographic images are viewed by others, the children depicted are victimized once again. The mere knowledge that images exist and are being circulated causes shame, humiliation and powerlessness. This victimization lasts forever since the pictures can resurface at any time, and this circulation has grown exponentially because of the Internet. As one expert explained: "[t]he victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child." At a more fundamental level, child pornography victims' rights of privacy and human dignity are violated when their images are circulated and viewed by others. The possessor thus has real victims and inflicts actual harm upon them by his conduct.

Professor Audrey Rogers, *Child Pornography's Forgotten Victims*, 28 Pace L.Rev. 847, 853-54 (2008) (footnotes omitted) cited with approval in *Cunningham* 680 F. Supp. 2d at 864.

In sentencing defendants, the Third Circuit has affirmed the existence of the harm caused by end users–consumers like Conover. In *U.S. v. Knox*, 32 F.3d 733, 750 (3rd Cir. 1994), the Third Circuit declared that child pornography is an "affront to the dignity and privacy of the child and an exploitation of the child's vulnerability." *See also U.S. v. Andersson*, 803 F.2d 903 (7th Cir. 1986) (the harm inflicted on these children is two-fold: the sexual abuse when the film or photograph is initially produced...and the harm continues when these photographs and films are distributed).

Andy recently retained legal counsel to assist him in securing restitution, including—in addition to the Marsh Law Firm—Heidi Nestle, Executive Director of the Utah Crime Victims Legal Clinic, and Paul Cassell, a professor of law at the S.J. Quinney College of Law at the University of Utah. Andy's legal counsel were informed that a forensic examination by the National Center for Missing and Exploited Children (NCMEC) identified four child sex abuse images of Andy on Conover's computers and hard drives. These four images were all possessed by Conover. Each possession is a gross invasion of Andy's privacy which causes him

harm thereby meeting the legal definition of "victim" in this case. 18 U.S.C. § 2259(c)("victim" means the individual harmed as a result of a commission of a crime under this chapter).

In *United States v. Kearney*, 672 F.3d 81, 95 (1st Cir. 2012) the First Circuit recently explained:

> Not surprisingly, the circuit courts agree that those children depicted in child pornography are victims within the meaning of § 2259(c). Every circuit to consider the matter has found that those depicted by child pornography are "victims" of the crimes of possession and distribution within the meaning of § 2259(c). *See McGarity*, 669 F.3d at 1265-66 (finding victim status based on *Ferber*); *Aumais*, 656 F.3d at 152 (quoting *Ferber* on victim status); *Kennedy*, 643 F.3d at 1263 (finding a possessor of child pornography harms those depicted even if the depicted individuals have no knowledge of the possessor's identity); *In re Amy Unknown*, 636 F.3d at 200-01 (those depicted in child pornography are victims under the reasoning of Ferber); *McDaniel*, 631 F.3d at 1208 ("McDaniel 'harmed' Vicky under the meaning of section 2259(c) by possessing images of her sexual abuse as a minor."); see also *Evers*, 669 F.3d at 655-56 (holding that the legal guardian of a minor who was the subject of child pornography was a victim within the meaning of § 2259(c)).

*See also United States v. Goff*, 501 F.3d 250, 259 (3rd Cir. 2007) ("These small victims may rank as 'no one else' in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are all too real. There is nothing 'casual' or theoretical about the scars they will bear from being abused for

Goff's advantage."); *United States v. Ketcham*, 80 F.3d 789 (3rd Cir. 1996) ("The primary victims that Congress had in mind when it enacted 18 U.S.C. § 2252(a) were the children depicted in pornographic materials.");

Andy has psychological counseling and other pecuniary losses from child pornography, such as the need for rehabilitation, vocational training, and lost income. The district court is obligated to award restitution for the "full amount" of these losses under 18 U.S.C. § 2259. Counsel has retained Dr. David L. Corwin, M.D., a Professor of Pediatrics at the University of Utah School of Medicine and a member of the Board of Directors of the American Professional Society on the Abuse of Children, to explain the impact of Conover's and other child pornography criminals' actions on Andy's mental health. Counsel has also secured the services of University of Chicago educated Doctor of Economics, Stan V. Smith to quantify Andy's lifetime losses.

Dr. Corwin anticipates that he will complete his forensic evaluation by December 23, 2013. Dr. Corwin has already advised that his evaluation revealed Andy's need for extensive psychological counseling over a lengthy period of time, the cost of which will likely be several hundred thousand dollars.

## DISCUSSION

Under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, victims have rights, including the right to be heard at any plea hearing, 18 U.S.C. § 3771(a)(4), and to receive "full and timely restitution as provided in law," 18 U.S.C. § 3771(a)(6). For child pornography victims, restitution for "the full amount" of a victim's losses is required under a "mandatory" restitution statute, 18 U.S.C. § 2259.

While Andy's counsel have not seen the full text of the plea agreement proposed to the Court by the Government and Conover, the Government explained that it contains the standard provision obligating Conover to make full restitution for all the activities underlying his criminal conviction. To avoid any later suggestion of surprise, Andy's counsel hereby alerts the Court and all parties to the case—the Government and Conover—that Andy has significant losses and thus will be seeking significant restitution in accordance with the plea agreement. (Other similarly-situated child pornography victims have likewise sought significant restitution. *See, e.g., In re Amy Unknown*, 701 F.3d 749 (5th Cir. en banc 2012) (remanding for $3.3 million restitution award for child pornography victim "Amy"), *cert granted sub nom. Paroline v. United States*, No. 12-8561 (U.S.) (to be argued Jan. 22, 2014)).

In light of his impending restitution filing, Andy requests that the Court clarify with Conover, during the plea colloquy, that the plea agreement will obligate him to make restitution to Andy and other victims of the underlying criminal conduct covered by the indictment, and that his restitution obligation could be significant. Andy understands, of course, the final determination concerning any restitution amount is ultimately made by the Court.

Andy has a right under the CVRA to be "heard" at any hearing concerning the plea, 18 U.S.C. § 3771(a)(4) (victims of crime have "[t]he right to be reasonably heard at any public proceeding in the district court involving…plea…."). Andy's counsel are filing this motion as his representatives under 18 U.S.C. § 3771 to prevent surprise, to inform the Court and counsel of Andy's intention to seek significant restitution, and to clarify any potential ambiguity concerning the plea agreement.

In addition, Andy's counsel have received reports that Conover may be disposing and dissipating assets, including a substantial piece of real estate in Maine. Andy hereby requests that the Court inform Conover that he may not move, transfer, conceal, dissipate, or otherwise reduce his assets in order to avoid restitution obligations. Andy respectfully requests that the Court alert Conover that concealing assets may be a basis for longer sentence, including an upward departure

from any advisory guidelines at sentencing. *See, e.g., United States v. Merritt*, 988 F.2d 1298, 1310 (2d Cir. 1993) (approving upward departure based on defendant hiding assets rather than paying restitution).

Even though he is not yet a party to this proceeding, Andy requests notices in this case via the Court's CM/ECF system so he can be aware of subsequent developments.

## CONCLUSION

Andy respectfully asks the Court to (i) clarify with Conover, during the plea colloquy, that the plea agreement will obligate him to make restitution to Andy and other victims of the underlying criminal conduct covered by the indictment, and that his restitution obligation could be significant; (ii) inform Conover that he may not move, transfer, conceal, dissipate, or otherwise reduce his assets in order to avoid restitution obligations; (iii) allow Andy to proceed by way of a pseudonym; (iv) to provide Andy's counsel with notices in this case via the Court's CM/ECF system; and (v) for such other and further relief as the Court deems just and proper.

DATED: December 17, 2013

Respectfully submitted,

/s/Alexander T. Linzer
Alexander T. Linzer
Andy's 18 U.S.C. § 3771 Representative
Admitted in NJ and NY
Phone: (646) 230-8543
Email: alexlinzer@marshlaw.us

/s/James R. Marsh
James R. Marsh
Andy's 18 U.S.C. § 3771 Representative
Admitted in NY and DC
Phone: (212) 372-3030
Email: jamesmarsh@marshlaw.us

MARSH LAW FIRM PLLC
PO Box 4668 #65135
New York, New York 10163-4668

## CERTIFICATE OF SERVICE

I certify that on November 17, 2013, the foregoing document was served by electronic means, through the Court's CM/ECF system, upon:

Diana V. Carrig
Assistant United States Attorney
United States Attorney's Office
401 Market Street Fl 4
Camden, NJ 08101
Phone: (856) 757-5026
Email: diana.carrig@usdoj.gov

Jerome M. Brown
1628 JFK Blvd Ste 1000
Philadelphia, PA 19103
Phone: (215) 568-0607
Email: jeromembrown@verizon.net

/s/Alexander T. Linzer
Alexander T. Linzer